**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**GOBEIL and PINSON, JJ.**

**NOTICE: Motions for reconsideration must be**
*physically received* **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**May 31, 2022**

# In the Court of Appeals of Georgia

A22A0139. BAREFOOT v. DENSON.

MCFADDEN, Presiding Judge.

Dustin Barefoot sued Armond Denson seeking damages for personal injuries he suffered when Denson struck him with his car. A jury returned a defense verdict, and the trial court denied Barefoot's motion for new trial. Barefoot then filed this appeal. Barefoot argues that the trial court erred by denying his motion for directed verdict, but we hold that the trial court properly submitted the case to the jury for resolution. Barefoot argues that the trial court erred by charging the jury on assumption of risk, but we hold that some evidence supported the charge so the trial court did not err. Barefoot argues that the trial court erred by denying his motion in limine, but he has not shown that the trial court abused his discretion. Barefoot argues

that the trial court erred by allowing a written copy of the jury instructions to go out with the jury, but OCGA § 9-10-5 (b) explicitly allows that action. So we affirm.

1. *Evidence presented at trial.*

Defendant Denson was driving his car to attend a birthday party in a gated subdivision. Denson did not have the transponder that lifted the gate arm to enter the subdivision. He waited by the gate for another vehicle to enter so that he could follow that vehicle through the gate.

A truck drove up to the gate, and Denson followed it in. Mike Bradley was the driver of the truck; plaintiff Barefoot and Andrew Hammock were passengers. Bradley stopped the truck after he passed through the gate so that the gate arm would descend onto Denson's car and prevent Denson from entering into the subdivision. Denson reached through his car window, lifted the gate arm, and drove through the gate.

The evidence as to what happened next is in sharp conflict. Denson testified that he was driving down the road in the subdivision behind the truck, which was going slow, veering, and stopping in front of Denson, as if to prevent him from passing. The vehicles reached a stop sign, and Denson yelled profanity and used a

rude hand gesture at the truck. The truck turned right, and Denson went straight. The truck turned around and began following Denson.

Barefoot, on the other hand, testified that as the vehicles reached the stop sign, Denson threw an object at the truck, so Bradley reversed, turned around, and began pursuing Denson. Denson denied throwing an object at the truck.

In any event, the parties agree that Bradley began following Denson; that Denson drove into a cul-de-sac; and that the truck pulled into the cul-de-sac.

Denson testified that the truck turned sideways to block his exit. Barefoot and Hammock, the other passenger in Bradley's truck, denied that the truck blocked Denson's exit. It is not disputed that Barefoot and Hammock exited the truck and approached Denson's car.

According to Denson, his car was still slowly moving—at about five or ten miles per hour—as the men approached it. Denson testified that Barefoot approached the driver's side of Denson's car, slapped Denson's window, and asked him to stop his car. Meanwhile, according to Denson, Hammock jumped on Denson's hood. Denson fish-tailed his car to throw off Hammock. According to Denson, he did not realize it at the time, but his car hit Barefoot. The impact broke Barefoot's leg.

Barefoot and Hammock testified instead that Barefoot walked behind Denson's car to get his license plate number and that Denson reversed his car into Barefoot and then drove off.

2. *Directed verdict*.

Barefoot argues that the trial court erred by denying his motion for directed verdict on the issue of Denson's fault. He contends that the uncontradicted evidence showed that Denson was negligent and negligent per se. We hold that the trial court properly submitted the case to the jury.

A trial court shall grant a directed verdict "[i]f there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict. . . ." OCGA § 9-11-50 (a). "On appeal from the denial of a motion for a directed verdict, we construe the evidence in the light most favorable to the party opposing the motion, and the standard of review is whether there is any evidence to support the jury's verdict." *Brown v. Tucker*, 337 Ga. App. 704, 720 (8) (788 SE2d 810) (2016) (citation and punctuation omitted).

As detailed above, much of the evidence was strongly contested, but some evidence supports the jury's defense verdict in Denson's favor. The jury could have

4

found that Barefoot was more at fault than Denson when he approached Denson's moving car and got close enough to slap the window, as Denson testified. And the trial court instructed the jury that should it find Barefoot's negligence equal to or greater than Denson's, then Barefoot could not recover. See OCGA § 51-12-33 (g) ("the plaintiff shall not be entitled to receive any damages if the plaintiff is 50 percent or more responsible for the injury or damages claimed").

We also disagree with Barefoot's argument on appeal that he was entitled to a directed verdict on the issue of fault relating to a claim for negligence per se for Denson's violation of OCGA § 40-6-270 (a) ("The driver of any vehicle involved in an accident resulting in injury to . . . any person . . . shall immediately stop such vehicle at the scene of the accident. . . ."). Barefoot did not assert a claim for negligence per se in his complaint, and he did not state this ground in his motion for directed verdict. "A motion for a directed verdict shall state the specific grounds therefor[,]" OCGA § 9-11-50 (a), "to assure that the trial court has an adequate basis for its decision." *Southern Land Title v. North Ga. Title*, 270 Ga. App. 4, 7 (2) (606 SE2d 43) (2004) (citation and punctuation omitted). Because Barefoot did not state this ground in his motion for directed verdict, he cannot raise it on appeal. *Southern Land Title*, 270 Ga. App. at 7 (2).

5

3. *Assumption of risk.*

Barefoot argues that the trial court erred by charging the jury on assumption of risk because no evidence supported such a charge. We disagree.

> There need be only slight evidence supporting the theory of the charge to authorize a requested jury instruction. . . . For the purposes of this appeal, we need not decide as a matter of law whether [Barefoot] assumed a risk that led to his injury; we must decide only whether there was slight evidence to support the jury instruction regarding assumption of the risk.

*Daly v. Berryhill*, 308 Ga. 831, 833-834 (843 SE2d 870) (2020).

Barefoot argues that an assumption-of-risk instruction was improper, given a complete absence of evidence that he knew of the specific risk of being hit by Denson's car since Denson did not blow his horn or give any warning, and since Barefoot was at the side of the car, not in front of it. We must "consider an objective common sense standard in assessing whether a plaintiff had knowledge of a risk. [Indeed,] some risks are so clear that we impute knowledge of the risk to the plaintiff, so long as the plaintiff is competent." *Daly*, 308 Ga. at 835.

According to Denson's testimony, Barefoot exited the truck that had been chasing Denson through the subdivision, walked up to Denson's moving car, and got close enough to slap the window.

> [A] competent adult like [Barefoot] cannot blind himself to the obvious risk of [closely approaching a moving car]. There thus was at least slight evidence that [Barefoot] knew that [his action] posed a risk of serious physical injury, and that he voluntarily exposed himself to that risk. The trial court did not err in giving the requested jury instruction.

*Daly*, 308 Ga. at 836.

4. *Motion in limine*.

Barefoot argues that the trial court erred by denying a motion in limine. "We review the trial court's grant or denial of a motion in limine for abuse of discretion." *State v. Stephens*, 307 Ga. 615, 616 (837 SE2d 830) (2020). Barefoot has not shown an abuse of discretion.

In his written motion in limine, Barefoot sought to exclude from trial "[a]nything that would tend to make race an issue in the case." Initially, the court did not rule on the motion, stating that he would revisit the motion in limine at a hearing prior to trial. Apparently, at some point, the court heard arguments of counsel

7

concerning the motion, although no transcript of any hearing on the motion is included in the record on appeal. Ultimately, the trial court denied the motion.

Barefoot's motion in limine "was so vague and overly broad as to render it virtually meaningless as a vehicle to decide an issue before it was raised in context at trial." *Williams v. Harvey*, 311 Ga. 439, 452-453 (2) (858 SE2d 479) (2021). And although Barefoot may have given context to his motion when the trial court heard argument of counsel, we do not have the benefit of a transcript. So Barefoot has not shown that the trial court abused his discretion by denying the motion in limine. See *Witty v. McNeal Agency*, 239 Ga. App. 554, 557 (2) (a) (521 SE2d 619) (1999) ("Since the motion in limine was overly broad . . ., then it was proper to deny such motion.")

5. *Allowing the jury to have a copy of the jury charge.*

Barefoot argues that the trial court abused his discretion by allowing the jury to have a written copy of the jury charge. But OCGA § 9-10-5 (b) allows it: "In any civil action, upon motion by a party, upon request by the jury, or sua sponte, a judge of a superior, state, or city court is authorized, but shall not be required, to reduce all of the charge to the jury to writing and send all of the charge so reduced to writing out with the jury during its deliberation." See also *Franklin v. State*, 298 Ga. 636, 642 (4)

8

(784 SE2d 359) (2016) ("trial courts clearly have the authority" to give the jury a written copy of the court's instructions for use in deliberations). Barefoot does not explain why the court's decision, permitted by the statute, amounted to an abuse of discretion.

6. *Denial of motion for new trial*.

Barefoot argues that, for the reasons discussed above, the trial court erred by denying his motion for new trial. As we hold that the trial court did not err for these reasons, we also hold that the trial court did not err by denying the motion for new trial based on these reasons.

*Judgment affirmed. Gobeil and Pinson, JJ., concur*.