**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**September 7, 2022**

# In the Court of Appeals of Georgia

A22A0882. ALVARADO v. THE STATE.

MERCIER, Judge.

Following a jury trial, Ruben Alvarado was convicted of rape and child molestation.[1] Alvarado appeals, claiming that the trial court erred by admitting hearsay testimony and that he received ineffective assistance of counsel. For the reasons that follow, we affirm.

Construed in the light most favorable to the verdict, the evidence at trial showed the following. See *Newman v. State*, 309 Ga. 171, 172 (1) (844 SE2d 775) (2020). The victim, her brother and Alvarado grew up together, and Alvarado's

---

[1] The jury found Alvarado not guilty of statutory rape. Additionally, the trial court entered nolle prosequi on a charge of aggravated child molestation and criminal attempt to commit a crime, and granted a motion for directed verdict on criminal solicitation.

grandmother would regularly babysit the victim and her brother. Alvarado's family and the victim's family were so close that the victim and her brother considered Alvarado's grandmother to be their grandmother as well.

In June of 2015, the victim's brother accessed his mother's phone, which the victim used, and found a series of messages on the mobile phone application "Kik" between the victim and Alvarado setting up a time to meet. Given the age difference between the victim and Alvarado (the victim was 12 years old at the time, and Alvarado was 20), the victim's brother thought it was odd that they were planning to meet. In order to ascertain the nature of the relationship between the victim and Alvarado, the victim's brother sent Alvarado messages through Kik while pretending to be the victim. In these messages, Alvarado told the victim that she should tell her mother that she wanted to spend the night with him because the victim "wan[ted to] come suck [his penis.]" Alvarado asked who owned the phone the victim was using, and the victim's brother responded "Mom" and Alvarado said "what if she sees this!? Delete Now." The victim's brother took photographs of the Kik conversation, and the photographs of the messages were admitted into evidence at trial.

Following his conversation on Kik with Alvarado, the victim's brother went to Alvarado's house and confronted him about the messages. Alvarado did not

2

explain or respond to questions from the victim's brother. At a later point Alvarado called the victim's mother and left a voicemail saying that "he wanted to make things right[.]"

The victim's brother reported the conversation to his mother and called 911. A Gwinnett County Police officer responded to the call and spoke with the victim, her mother and her brother at Alvarado's grandmother's house. The victim told the officer that Alvarado had put his penis in her mouth and in her private parts. The victim later told the nurse who conducted her sexual assault examination that Alvarado "put his private part in [her] private parts and [her] mouth" and that he "put something on his privates that was like plastic[.]" During the examination, the nurse noted redness on the victim's labia minora, which he testified could be caused by "repeated attempt[ed] penetration into the vagina," but it was inconclusive.[2]

The victim, who was 16 years old at the time of trial, took the stand. The prosecutor asked if she recalled being interviewed by police officers and "telling them about what happened," and she said yes, and the prosecutor asked "when you were . . . speaking to law enforcement was that the truth," and again the victim responded

---

[2] The nurse testified that he frequently does not observe injuries in children who have been sexually assaulted.

yes. On cross-examination, counsel for Alvarado asked the victim about the day in question, and she testified that she went into Alvarado's room to watch a movie with his sister. She was also asked on cross-examination if she had ever told Alvarado's grandmother that anyone treated her in a way that made her uncomfortable, and she said no. The victim did not testify about the incident at trial.

A special victims unit detective conducted a forensic interview of the victim, that was played for the jury at trial. In the interview, the victim said that Alvarado "touched [her] in [her] private part" with "his front part" or "penis" twice, and with his fingers, and that he hurt her. She also said that he pulled her shorts down and took photographs of her.

The detective also interviewed Alvarado, and the interview was played for the jury. In the interview, Alvarado denied that he had sexually assaulted the victim but admitted that he had the Kik application on his phone and that he called the victim's mother.

Following his conviction, Alvarado filed a motion for new trial, which the trial court denied.

1. Alvarado claims that the trial court erred by admitting the victim's hearsay statements when she did not testify regarding the incident at trial. Alvarado did not

4

object to the evidence on this ground at trial, so we review his claim only for plain error. See OCGA § 24-1-103 (d), *Grier v. State*, 313 Ga. 236, 240 (3) (869 SE2d 423) (2022). To establish plain error, Alvarado "must point to an error that was not affirmatively waived, the error must have been clear and not open to reasonable dispute, the error must have affected his substantial rights, and the error must have seriously affected the fairness, integrity, or public reputation of judicial proceeding." *Grier*, supra at 240-241 (3) (citation and punctuation omitted).

As an initial matter, we must determine whether an error occurred. See *Grier,* supra at 243 (3) (d); *Shaum v. State*, 355 Ga. App. 513, 516 (2) (844 SE2d 863) (2020). At the time of Alvarado's offenses in 2015, the Child Hearsay Statute, provided:

> A statement made by a child younger than 16 years of age describing any act of sexual contact or physical abuse performed with or on such child by another or with or on another in the presence of such child shall be admissible in evidence by the testimony of the person to whom made if the proponent of such statement provides notice to the adverse party prior to trial of the intention to use such out-of-court statement and such child testifies at the trial, unless the adverse party forfeits or waives such child's testimony as provided in this title, and, at the time of the testimony regarding the out-of-court statements, the person to whom the

5

child made such statement is subject to cross-examination regarding the out-of-court statements

OCGA § 24-8-820 (2013).

Here, the State provided notice of its intent to use the victim's out-of-court statements, the victim testified at trial, and the persons to whom the victim made the statements were subject to cross-examination at trial. While the victim did not testify as to the specifics of the incident in question at trial, "it is undisputed that the victim appeared at trial, took the witness stand, and was available for cross-examination[.]" *Allison v. State*, 356 Ga. App. 256, 260 (1) (846 SE2d 222) (2020) (footnote omitted). As we have previously held, "there is no requirement that the child victim testify as to [the defendant's] specific actions or the specific contents of her interview video, let alone that the State successfully elicit such testimony on direct examination." Id. The victim's prior statements and her testimony at trial simply presented a question of credibility for the jury; it did not render the prior statements inadmissible under the Child Hearsay Statute. See id; *Abernathy v. State*, 357 Ga. App. 732, 737 (1) (849 SE2d 489) (2020). There was therefore no error, much less plain error, in the admission of the victim's prior statements, as the requirements of OCGA § 24-8-820 (2013) were satisfied. See generally *Allison,* supra; *Cornell v. State*, 349 Ga. App.

6

883, 884 (2) (827 SE2d 63) (2019); *Kirkland v. State*, 334 Ga. App. 26, 32-33 (2) (778 SE2d 42) (2015) (testimony from victim's family and her recorded forensic interview were admissible under Child Hearsay Statute even when victim was unresponsive to several questions at trial).

2. Alvarado claims that his trial counsel was ineffective by failing to object to the State's direct examination of the victim, by failing to cross-examine the victim about the incident and by failing to object to the State's closing argument. To prevail on this claim, Alvarado "must prove both deficient performance by his counsel and resulting prejudice." *Grier*, supra at 245 (4), citing *Strickland v. Washington*, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984). In order to prove deficient performance, "he must show that his attorney performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms." Id. (citation and punctuation omitted). However, there exists a "strong presumption that counsel's performance fell within a wide range of reasonable professional conduct, and that counsel's decisions were made in the exercise of reasonable professional judgment." Id. (citation and punctuation omitted). For the second element, in order to establish prejudice, Alvarado "must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

7

would have been different." Id. at 245-246 (4) (citation and punctuation omitted). If the defendant fails to show one of the two elements, we need not address the other. Id. at 246 (4).

(a) Alvarado argues that his trial counsel was ineffective for failing to object when the prosecutor asked the victim if she had told the truth during her forensic interview. He argues that the inquiry was "impermissibly bolstering[.]"

"It has been repeatedly held that a witness, even an expert, can never bolster the credibility of another witness as to whether the witness is telling the truth." *Handley v. State*, 289 Ga. 786, 787-788 (2) (a) (716 SE2d 176) (2011) (citation and punctuation omitted). However, Alvarado argues that the victim bolstered her own testimony by stating that she told the truth in her forensic interview, and "[w]e know of no legal reason . . . why a witness should be prohibited on direct examination from asserting his [or her] own credibility by testifying that he [or she] is telling the truth and giving some explanation." *Thomas v. State*, 318 Ga. App. 849, 856 (4) (c) (734 SE2d 823) (2012); see also *Handley*, supra at 788 (2) (a); *Hardin v. State*, 344 Ga. App. 378, 382 (1) (a) (810 SE2d 602) (2018) ("when a witness's statement does not directly address the credibility of *another* witness, there is no improper bolstering") (emphasis supplied).

8

Further, "[t]he Child Hearsay Statute actually contemplates testimony from both the child and those witnessing the child's later reaction, even if the hearsay may be 'bolstering.' Any 'bolstering' can be explored by defendant in cross-examination." *Abernathy*, supra at 738 (2) (citation and punctuation omitted). Thus, a bolstering objection would have been without merit, and failure to make a meritless objection cannot be evidence of ineffective assistance. See id.

(b) Alvarado argues that his counsel provided ineffective assistance by failing to cross-examine the victim regarding the incident. However, Alvarado failed to question his trial counsel about his cross-examination of the victim at the hearing on his motion for new trial. Because Alvarado did not ask his trial counsel about his cross-examination of the victim, we presume that any reason relating to trial counsel's cross-examination of the victim was strategic and would not amount to ineffective assistance. See generally *Newman v. State*, 309 Ga. 171, 176 (2) (a) (844 SE2d 775) (2020) ("In the absence of testimony to the contrary, counsel's actions are presumed to be strategic, and strongly presumed to fall within the wide range of reasonable professional assistance."). Furthermore, "decisions about cross-examination do not amount to deficient performance unless they are so unreasonable that no competent attorney would have made them under similar circumstances." Id. at 178 (2) (d)

(citation and punctuation omitted). Alvarado's trial counsel extensively cross-examined the detective regarding the victim's forensic interview and pointed to inconsistencies in the victim's statement through his cross-examination. While Alvarado's appellate counsel may have chosen a different strategy for the cross-examination of the victim, we cannot say that trial counsel performed deficiently. See generally id.

(c) Finally, Alvarado claims that his trial counsel was ineffective for failing to object to the State's closing argument. "Whether to object to a particular part of a prosecutor's closing argument is a tactical decision, and counsel's decision not to make an objection must be patently unreasonable to rise to the level of deficient performance." *Smith v. State*, 296 Ga. 731, 735-736 (2) (b) (770 SE2d 610) (2015) (citations and punctuation omitted).

Alvarado points to a statement by the prosecutor in her closing argument that Alvarado did not retain the presumption of innocence. The prosecutor stated: "At the beginning of this trial this Defendant was cloaked in the presumption of innocence. But that's not a permanent status. That doesn't stay with him forever. Keep that in mind. Just because he had it in the beginning doesn't mean he has it now." However, she then said "[i]t's my burden and I bear it." While the prosecutor's closing

10

argument was unclear, she immediately attempted to clarify her remarks. Moreover, the trial court properly instructed the jury on the burden of proof and presumption of innocence, and we presume that jurors follow the law. See *Clark v. State*, 307 Ga. 537, 544-545 (2) (c) (837 SE2d 265) (2019) (trial counsel not ineffective for failing to object to prosecutor's plain misstatement regarding presumption of innocence during closing argument where the trial court correctly charged the jury). Compare *Debelbot v. State*, 308 Ga. 165, 167 (839 SE2d 513) (2020) (remark by prosecutor during closing argument that "[y]ou don't have to be fifty-one percent sure" was both an egregious misstatement of the law to which there was no good reason a reasonably competent lawyer would have failed to object and "uniquely harmful"). As a result, this enumeration of error fails.

*Judgment affirmed. Dillard, P. J., and Markle, J., concur.*